622 A.2d 361

**COMMONWEALTH of Pennsylvania**

**v.**

**David SEIBERT, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 7, 1993.

Filed March 24, 1993.

---

244

Brian McMonagle, Philadelphia, for appellant.

Karen A. Brancheau, Asst. Dist. Atty., Philadelphia, for Com. appellee.

Before CIRILLO, BECK and KELLY, JJ.

CIRILLO, Judge:

This is an appeal from a judgment of sentence entered in the Court of Common Pleas of Philadelphia County. We affirm.

Following a bench trial before the Honorable William J. Mazzola, appellant David Seibert was convicted of third-degree murder, recklessly endangering another person, and possession of controlled substances with intent to deliver. Post-trial motions were filed and denied. Seibert was sentenced to five to ten years imprisonment on the murder conviction, a concurrent term of one to two years imprisonment on the reckless endangerment conviction, and a concurrent term of seven years probation on the possession with intent to deliver conviction. Seibert filed a motion for reconsideration of sentence claiming his sentence was excessive and exceeded the guidelines. The motion was denied and this appeal followed. Seibert raises the following issues for our review:

1. Whether there is insufficient evidence of malice to sustain the third-degree murder conviction?

2. Whether the sentence of 7 years probation for a violation of 35 Pa.S. § 780–113(a)(3) is in excess of the five year maximum sentence authorized by 35 Pa.S. § 780–113(f)(2) and 42 Pa.C.S. § 9754, and must therefore be vacated?

3. Whether the imposition of a five-year mandatory sentence for an unintentional killing violates the intent of the legislature in enacting 42 Pa.C.S. § 9712 of the mandatory minimum sentencing act?

4. Whether there is insufficient evidence to sustain appellant's conviction of recklessly endangering another person?

5. Whether there is insufficient evidence to sustain appellant's conviction of possession with the intent to deliver marijuana?

6. Whether appellant was denied a fair trial because of the impartiality of the factfinder?

First, we note that issue four, five, and six were not raised in post-trial motions. These claims, therefore, are waived.

*See* Pa.R.Crim.P. 1123(a); *Commonwealth v. Holmes,* 315 Pa.Super. 256, 461 A.2d 1268 (1983). Further, the record indicates that after filing his appeal, Seibert was ordered to file a concise statement of matters complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Seibert failed to comply with this directive.

█ Seibert's first issue, concerning the sufficiency of the evidence of malice to sustain a conviction for third-degree murder, was properly raised in post-trial motions and has been preserved for appeal. Pa.R.Crim.P. 1123(a). In this claim, Seibert argues that the evidence was insufficient to establish malice, a necessary element of third-degree murder. The well-established standard for reviewing a sufficiency claim on appeal is

> whether, viewing the evidence in the light most favorable to the Commonwealth [as verdict winner], and drawing all reasonable inferences favorable to the Commonwealth, there is sufficient evidence to find every element of the crime beyond a reasonable doubt.... The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.... Moreover, in applying the above test, the entire trial record must be evaluated and all evidence actually received must be considered.... Finally, the trier of fact, while passing upon the credibility of witnesses and the weight to be afforded the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Griscavage,* 512 Pa. 540, 543 517 A.2d 1256, 1257 (1986) (quoting *Commonwealth v. Harper,* 485 Pa. 572, 576–577, 403 A.2d 536, 538–539 (1979) (citations omitted)). The facts and circumstances established by the Commonwealth "need not be absolutely incompatible with [the] defendant's innocence, but the question of any doubt is for the [fact finder] unless the evidence 'be so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.'" *Commonwealth v. Sullivan,* 472 Pa. 129, 150, 371 A.2d 468, 478 (1977) (*quoting Commonwealth v. Libonati,* 346 Pa. 504, 508, 31 A.2d 95, 97 (1943).

Seibert, then twenty-six years old, spent the evening of November 17, 1990 entertaining the teenage victim and four other youths, including Michael Sola, Robert Robinson, and Lisa Gold. During the evening, Seibert supplied his guests with beer, Valium and marijuana. Seibert also brandished a gun during the evening, repeatedly removing and replacing the ammunition clip, passing the gun around the room, and pointing it at his guests after having been asked not to do so. This went on for approximately fifteen minutes. Ultimately, Seibert's destructive behavior led to the death of his friend, Keith Marigliano.

After placing the gun on a shelf in the living room and leaving it for a couple of hours, Seibert retrieved the gun, walked over to the victim, placed the gun at the victim's head, and shot him. Sola testified to these events, stating: "[The defendant] had the gun pointed to Keith's head and then I looked at them and I thought they were playing around and I just turned my head and the whole room flashed and I heard a pop." Robinson also testified that he heard a shot and saw a flash of light. He then heard Seibert say: "I shot him. I can't believe I shot him."

Lisa Gold testified that she was seated on the victim's lap at the time and that Seibert walked up to the victim and shot him in the head. Lisa Gold's testimony also established that after the shooting, Seibert and his girlfriend were devising a plan to explain the victim's death—that two intruders had broken into the apartment and killed the victim.

After the shooting, the front desk of Seibert's apartment building was notified. Mr. George Alden, a security guard, was sent to Seibert's apartment. Seibert answered the door and then telephoned for medical assistance. Mr. Alden testified that when asked what had occurred, Seibert responded that two intruders broke into his apartment and shot his friend.

The police arrived a short time later. Following a search of Seibert's apartment, the officers recovered a semi-automatic handgun, a starter pistol, which was found on the roof of the apartment, a spent casing behind the chair on which the victim

lay dead, as well as marijuana and valium. The officers spoke with Seibert, Lisa Gold and Seibert's girlfriend and were told that Seibert was in the bathroom when two intruders broke into the apartment and shot the victim.

At trial, David Seibert testified that he "lied when the cops came" because he was "scared to death." He also testified that when he went to the bathroom, the gun was "under the couch ... with the clip out of it." When Seibert came out of the bathroom, he went over to the victim because the gun was in the victim's chair. Seibert reached for the gun at the same time the victim did and the gun "was in both of our hands and I was standing over him and as I came through the gun went off ... I just grabbed the gun and it went off.... I called the ambulance right away. I didn't know what to do."

Dr. Paul J. Hoyer, Assistant Medical Examiner of Philadelphia, testified that the victim died as a result of a gunshot wound to the left side of the forehead. Dr. Hoyer stated that his examination revealed that the gun was held to the skin, but not pressed against it, when the gun was fired.

After hearing this testimony, the trial court found Seibert guilty of third-degree murder, recklessly endangering another person, and possession of controlled substances with intent to deliver (marijuana and valium). The court found Seibert's actions constituted implied malice, sufficient to support a conviction of third-degree murder.

Third-degree murder is defined in the Crimes Code as "All other kinds of murder" other than first-degree murder or second-degree murder. 18 Pa.C.S. § 2502(c). The elements of the third-degree murder, as developed by case law, are a killing done with legal malice but without the specific intent to kill required in first-degree murder. *See Commonwealth v. Pitts,* 486 Pa. 212, 404 A.2d 1305 (1979). "Malice express or implied is the criteria and absolutely the essential ingredient of murder." *Commonwealth v. Commander,* 436 Pa. 532, 537, 260 A.2d 773, 776 (1970). The traditional definition of malice was set forth in *Commonwealth v. Drum,* 58 Pa. 9 (1868):

Malice is a legal term, implying much more. It comprehends not only a particular ill-will, but every case where there is wickedness of disposition, hardness of heart, cruelty, *recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured.* Murder, therefore, at common law embraces cases where no intent to kill existed, but where the state or frame of mind termed malice, in its legal sense, prevailed.

*Id.* at 15 (emphasis added). *See also Commonwealth v. Hilbert,* 476 Pa. 288, 382 A.2d 724 (1978); *Commonwealth v. Polimeni,* 474 Pa. 430, 378 A.2d 1189 (1977); *Commonwealth v. Green,* 464 Pa. 557, 347 A.2d 682 (1975). Under the Crimes Code, 18 Pa.C.S. § 101 *et seq.,* the offense of third-degree murder incorporates common law malice as an element. 18 Pa.C.S. §§ 2501, 2502(c). Malice is the distinguishing factor between murder and the lesser degrees of homicide. *See Commonwealth v. Culmer,* 463 Pa. 189, 344 A.2d 487 (1975). Chief Justice Nix explained:

[B]etween the recklessness or culpable negligence necessary to support the charge of involuntary manslaughter, *see Commonwealth v. Busler,* 445 Pa. 359, 284 A.2d 783 (1971), and the specific intent to kill which is a prerequisite of murder of the first degree, there is a class of wanton and reckless conduct which manifests such an extreme indifference to the value of human life which transcends the negligent killing and reaches to the level of malice ...

*Commonwealth v. Taylor,* 461 Pa. 557, 337 A.2d 545 (1975). Further, malice may be inferred from the use of a deadly weapon on a vital part of the body. *Commonwealth v. Hinchcliffe,* 479 Pa. 551, 388 A.2d 1068, *cert. denied,* 439 U.S. 989, 99 S.Ct. 588, 58 L.Ed.2d 663 (1978). *See also Commonwealth v. Caye,* 465 Pa. 98, 348 A.2d 136 (1975); *Commonwealth v. Boyd,* 463 Pa. 343, 344 A.2d 864 (1975).

In *Commonwealth v. Malone,* 354 Pa. 180, 47 A.2d 445 (1946), the Pennsylvania Supreme Court clarified the concept of malice:

When an individual commits an act of gross recklessness for which he must reasonably anticipate that death to another is likely to result, he exhibits that "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty" which proved that there was at that time in him "the state or frame of mind termed malice."

*Id.* at 183, 47 A.2d at 447 (quoting *Commonwealth v. Drum, supra.*) In *Commonwealth v. Young,* 494 Pa. 224, 431 A.2d 230 (1981), the Pennsylvania Supreme Court noted that malice may be found where the "actor consciously disregard[s] an unjustified and extremely high risk that his actions might cause death or serious bodily harm." *Id.* at 228, 431 A.2d at 232. *See Commonwealth v. Rife,* 454 Pa. 506, 312 A.2d 406 (1973) (malice imports the absence of justification, excuse or mitigation *and* intent to cause a particular harm *or* the wanton and willful doing of an act with knowledge of circumstances indicating awareness of a plain and strong likelihood that harm will result); *see also Commonwealth v. Hare,* 486 Pa. 123, 129, 404 A.2d 388, 391 (1979) (malice may be found where the perpetrator "consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily harm."); *Commonwealth v. Wanamaker,* 298 Pa.Super. 283, 444 A.2d 1176 (1982) (same).

■ Siebert argues that the evidence did not establish the malice required for third-degree murder. He maintains that the evidence established poor judgment, but not the knowledge required to establish malice, and that the trial court erred in finding malice "where there was recklessness of consequences *unaccompanied* by wickedness of disposition, hardness of heart, cruelty and mind regardless of social duty." The law, however, does not require for a finding of third-degree murder the specific intent to kill. *See Young, supra; Hare, supra; Wanamaker, supra.* An intentional act which indicates recklessness of consequences and a mind regardless of social duty is sufficient, even if there was no intent to harm another.

To summarize: If there was an unlawful killing with (legal) malice, express, or implied, that will constitute murder even though there was no intent to injure or kill the particular person who was killed and even though his death was unintentional or accidental....

*Commonwealth v. Gooslin,* 410 Pa. 285, 289, 189 A.2d 157, 158 (1963).

Here, the trial court determined that the evidence presented established implied malice. The question we must decide is whether, after reviewing the record in the light most favorable to the Commonwealth and granting all reasonable inferences in favor of the Commonwealth, a malicious killing was established.

In *Commonwealth v. Young,* 494 Pa. 224, 431 A.2d 230 (1981), the Pennsylvania Supreme Court addressed this issue in a similar context. The defendant, Oscar P. Young, was seated in the rear of a bus with two companions. Young and his companions began shouting obscenities at several youths in the street, one of whom was the victim, Ralph Williams. Williams and another youth threw snowballs at the bus. Williams "ran the bus down" and attempted to board it. The bus driver would not seat Williams and ordered him off the bus. When Williams was back on the street, Young drew a .22 caliber gun from his waistband, pointed it out an open window, and fatally shot Williams in the chest.

At trial Young testified that the shooting was accidental. He stated that he pointed the gun at Williams "just to scare [him]" and that the bus hit a bump at that time which caused the gun to discharge accidentally. One of Williams' companions testified that before he heard the gunshot, he saw an arm come through the bus window and heard a voice state "I'm going to get you." *Id.* at 227, 431 A.2d at 231. The trier of fact chose to reject Young's testimony, *see Commonwealth v. Green,* 493 Pa. 409, 415, 426 A.2d 614, 617 (1981), and Young was convicted of third-degree murder. On appeal, Young argued that the evidence was insufficient to prove beyond a reasonable doubt that the killing was committed with malice. The Pennsylvania Supreme Court disagreed, stating:

[Young] intentionally pointed a loaded gun at the victim and shot him in the chest. Under these circumstances, whether the gun discharged accidentally or was fired intentionally is irrelevant for the purpose of determining the existence of malice.[ ] Even if, as [Young] claims, he did not know that the gun was loaded and intended only to "scare" the victim, his conduct nevertheless unjustifiably created an extremely high degree of risk, thereby evincing a wanton and reckless disregard for human life. By intentionally aiming a gun at Williams without knowing for a certainty that it was not loaded, appellant exhibited that type of cruel and wanton conduct of which legal malice is made.

*Young,* 494 Pa. at 228–29, 431 A.2d at 232.

Here, as in *Young,* the finder of fact chose to disregard the defendant's testimony. Judge Mazzola instead chose to believe the testimony of the eyewitnesses, Lisa Gold and Michael Sola, both of whom stated that Seibert pointed the gun at the victim and shot him, and the testimony of the medical examiner, Dr. Hoyer, who testified that the gun was held against the victim's forehead when the victim was shot. Seibert, not knowing for certain whether the gun was loaded, "exhibited that type of cruel and wanton conduct of which legal malice is made." *Id.* The trial court found that the circumstances established "implied malice." The record fully supports this finding. Siebert's characterization of his actions as simply an illustration of poor judgment understates the gravity of his actions and the Commonwealth's evidence, and disregards Judge Mazzola's role in this case as determiner of credibility and finder of fact. *See Commonwealth v. Kersten,* 333 Pa.Super. 343, 482 A.2d 600 (1984) (malice which may be inferred from attending circumstances in a homicide prosecution consists either of an express intent to kill or inflict great bodily harm, or of a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, indicating unjustified disregard for the probability of death or great bodily harm); *see also Commonwealth v. Pigg,* 391 Pa.Super. 418, 571 A.2d 438, *appeal denied,* 525 Pa. 644, 581 A.2d 571 (1990) (operation of 18–wheel tractor trailer

down narrow road while in intoxicated state is sufficient to give rise to inference of malice as necessary to support conviction for third-degree murder).

■ Seibert also argues that the trial court erred in finding malice where the Commonwealth's direct evidence "negated the inference of malice." In addition to the testimony recounted above, the Commonwealth's witnesses had also testified that Seibert and the decedent were friends, and that there had been no displays of animosity between them that evening. Thus, Seibert argues, the Commonwealth's direct evidence negated the inference of malice.

■ Seibert's expression of the law is correct. An inference of malice cannot be accepted in a vacuum. The law infers or presumes from the use of a deadly weapon, *in the absence of circumstances of explanation or mitigation,* the existence of malice. *See Commonwealth v. Jones,* 355 Pa. 522, 50 A.2d 317 (1947); *see generally* 40 Am.Jur.2d Homicide § 265 (1968). "While this inference is well recognized in our law it will not be permitted to support a finding of malice where the direct evidence presented in the Commonwealth's case proves the contrary." *Commonwealth v. Caye,* 465 Pa. 98, 101, 348 A.2d 136, 137 (1975). Seibert's reliance on this rule, however, is misplaced. The Commonwealth's evidence that Seibert and the decedent were friends does not prove the contrary here; the evidence of Seibert's friendship with the decedent does not prove that Seibert's recklessness did not reach to the level of malice sufficient for a finding of third-degree murder.

In *Caye, supra,* and in a similar case, *Commonwealth v. McGuire,* 487 Pa. 208, 409 A.2d 313 (1979), the issue before the Supreme Court of Pennsylvania was whether the evidence was sufficient to support a finding of malice in a murder conviction. In both cases the appellants had used a deadly weapon on a vital part of the decedent's body, raising the inference of malice. In both cases the appellants had raised the defense of self-defense, and the evidence presented reached only to the level of imperfect self-defense, that is, the

appellant either used excessive or unnecessary force on the victim, or his belief that his life was in danger was an unreasonable belief. Thus, the evidence presented, although sufficient to reject a claim of self-defense, was not sufficient to find malice and would have supported only a finding of voluntary manslaughter. *Caye*, 465 Pa. at 102, 348 A.2d at 138; *McGuire*, 487 Pa. at 218, 409 A.2d at 319. Here, there is no claim of self-defense, nor is there an issue of imperfect self-defense. Although we do not necessarily interpret *Caye* and *McGuire* as negating the inference of malice only in situations involving imperfect self-defense, we are not persuaded that the rule is applicable in this context. The evidence which Seibert points to as negating the inference of malice is not related to conduct which formed the basis for the court's finding of malice. The malice here was not based upon evidence of hatred, spite, or ill-will; rather, it was founded upon evidence of recklessness of consequences and a mind regardless of social duty. *See Young, supra; Pigg, supra.*

After reviewing the evidence in the light most favorable to the Commonwealth, and granting all reasonable inferences in favor of the Commonwealth, we conclude that the evidence is sufficient to establish the element of malice necessary for a conviction of third-degree murder. *Griscavage, supra; Young, supra.*

■ In issues two and three Seibert challenges the legality of his sentence. First, Seibert claims that the sentence of seven years probation for a violation of section 780–113(a)(16) and section 780–113(a)(30) of the Controlled Substance, Drug, Device and Cosmetic Act, 35 Pa.S. § 780–113(a)(30), exceeds the maximum term allowed by statute and is therefore illegal. Seibert was convicted of possession with intent to deliver two controlled substances, marijuana, a schedule I substance, and Valium, a schedule IV substance. *See* 28 Pa.Code § 25.-72(e)(1)(xiii). The maximum sentence that can be imposed for possession with intent to deliver marijuana, a schedule I substance, is a term of imprisonment of five years. 35 Pa.S. § 780–113(f)(2). The maximum sentence that can be imposed for possession with intent to deliver Valium, a schedule IV

substance, is three years. 35 Pa.S. § 780–113(f)(3). Seibert's sentence of seven years probation does not exceed the statutory limit.

Finally, Seibert argues that the mandatory minimum sentence of five years imprisonment for a conviction of third-degree murder violates the legislature's intent in enacting the Mandatory Minimum Sentencing Act. 42 Pa.C.S. § 9712.[1] Seibert's argument focuses on the "unintentional" nature of his act, and is premised upon his characterization of the killing as an "accidental shooting." This argument is meritless. The trial court's determination that the evidence established murder in the third degree has been resolved in the Commonwealth's favor and, therefore, Seibert's claim must fail.

Judgment of sentence affirmed.

---

1. The Act provides in part:

(a) **Mandatory sentence.**—Any person who is convicted in any court of this Commonwealth of murder of the third degree ... shall, if the person visibly possessed a firearm during the commission of the offense, be sentenced to a minimum sentence of at least five years of total confinement notwithstanding any other provision of this title or other statute to the contrary.

42 Pa.C.S. § 9712(a).