J-S69005-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TROY C. VINCENT | |
| Appellant | No. 1926 EDA 2013 |

Appeal from the Judgment of Sentence May 29, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0011466-2011

BEFORE: GANTMAN, P.J., FORD ELLIOTT, P.J.E., and STABILE, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED DECEMBER 23, 2014**

Appellant, Troy C. Vincent, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his bench trial convictions for murder of the third degree, firearms not to be carried without a license, carrying firearms on public streets or public property in Philadelphia, and possessing instruments of crime.[1] We affirm.

The trial court opinion fully sets forth the relevant facts and procedural history of this case. Therefore, we have no reason to restate them.

Appellant raises the following issues for our review:

> WHETHER…APPELLANT'S CONVICTION FOR MURDER WAS
> AGAINST THE WEIGHT OF THE EVIDENCE AND SHOCKING
> TO ONE'S SENSE OF JUSTICE WHERE THERE WAS A LACK

---

[1] 18 Pa.C.S.A. §§ 2502(c), 6106(a)(1), 6108, and 907(a), respectively.

OF CREDIBLE EVIDENCE THAT…APPELLANT POSSESSED THE MALICE FOR THIRD DEGREE MURDER, WHERE THE VICTIM WAS THE AGGRESSOR HAVING PRECIPITATED THE VIOLENCE, WHERE IT WAS UNCLEAR WHO BROUGHT THE GUN TO THE SCENE AND WHERE THE COMMONWEALTH DID NOT BEAR ITS BURDEN OF DISPROVING THAT…APPELLANT ACTED UNDER A SUDDEN AND INTENSE PASSION CREATED BY THE SERIOUS PROVOCATION OF THE VICTIM.

WHETHER THE ADJUDICATION OF GUILT IS BASED UPON INSUFFICIENT EVIDENCE BECAUSE IT WAS AN UNREASONABLE INFERENCE TO CONCLUDE BEYOND A REASONABLE DOUBT THAT…APPELLANT POSSESSED THE MALICE FOR MURDER WHERE HE WAS SUDDENLY ATTACKED BY THE VICTIM WITHOUT ANY PROVOCATION OR REASON AND WHERE IT IS UNCLEAR WHO BROUGHT THE GUN TO THE SCENE.

(Appellant's Brief at 6).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Rose Marie DeFino-Nastasi, we conclude Appellant's issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. (**See** Trial Court Opinion, filed January 23, 2014, at 5-8) (finding: **(1)** surveillance video from crime scene depicted Appellant standing outside bar entrance when victim appeared and swung his arms at Appellant; video showed Appellant holding gun and flash going past victim's leg; eyewitness testimony established victim did not have gun before he left bar to confront Appellant, and Appellant shot victim with handgun; victim died from three bullet wounds to his chest and abdomen; seven shell casings recovered from crime scene were all fired from same gun; Commonwealth

presented sufficient evidence to establish that Appellant possessed malice required for murder; **(2)** in light of significant evidence establishing Appellant's malice, verdict did not shock one's sense of justice; verdict was not against weight of evidence). Accordingly, we affirm on the basis of the trial court opinion.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/23/2014

IN THE COURT OF COMMON PLEAS OF PHIALDELPHIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA :

V.       :   CP 51 CR 0011466 2011

TROY C. VINCENT     :   FILED

        OPINION     JAN 2014

DeFino-Nastasi, J.

## PROCEDURAL HISTORY

On December 18, 2012, the Defendant was found guilty following a bench trial presided over by the Honorable Rose Marie DeFino-Nastasi of: Third Degree Murder[1], as a felony of the first degree, Firearms Not to be Carried without a License (Vufa 6106)[2], as a felony of the third degree, Carrying Firearms on Public street or Public Property in Philadelphia (Vufa 6108)[3], as a misdemeanor of the first degree, and Possession of an Instrument of Crime (PIC)[4], as a misdemeanor of the first degree.

On May 29, 2013, the Defendant was sentenced to eighteen (18) to thirty-six (36) years' incarceration for the Third Degree Murder conviction; three and a half (3 ½) to seven (7) years for the Vufa 6106 conviction, and two and a half (2 ½) to five (5) years for both the Vufa 6108 conviction and the PIC conviction. All sentences were ordered to run concurrently.

On July 3, 2013, the Defendant filed a Notice of Appeal to the Superior Court.

On November 4, 2013, the Defendant filed a 1925(b) statement claiming that: (1) The Defendant's conviction for Murder of the third degree is against the weight of evidence and



CP-51-CR-0011466-2011 Comm. v. Vincent. Troy C.
Opinion

7108118451

---

[1] 18 Pa.C.S.A. § 2502
[2] 18 Pa.C.S.A. § 6106
[3] 18 Pa.C.S.A § 6108
[4] 18 Pa.C.S.A. § 907

1



shocking to one's sense of justice where there is a lack of evidence to show that the Defendant possessed the malice for third degree murder; and (2) the Defendant's guilt is based upon insufficient evidence because it is an unreasonable inference to conclude beyond a reasonable doubt that Defendant possessed malice for Murder when he was attacked by the victim without any provocation and where it is unclear who brought the gun to the scene.

## FACTS

Valarie Steadman testified that she was married to Lamont Watts (hereinafter "the decedent"). She had talked to him on March 29, 2009 at approximately 6:30 p.m. that evening, and later identified his body at the Office of Medical Examiners. (Notes of Testimony, Trial, December 18, 2013, pp. 27-28).

Police Officer John Donaghy testified that he was on patrol on March 29, 2009 when, at approximately 9:45, he was called to Pro Lounge Bar at 6332 Germantown Avenue. (N.T., id., pp. 30). When he arrived at the scene he observed a black male wearing a white T-shirt lying face up on the sidewalk in front of the bar. (N.T., id., pp. 30). The decedent was unresponsive but breathing when Officer Donaghy checked his vitals. (N.T., id., pp. 31).

Dr. Sam Gulino testified as an expert in the field of forensic pathology. Dr. Gulino examined the body of the decedent and found three gunshot wounds: one to the left upper chest, one to the left lower chest, and one to the left side of the abdomen. (Notes of Testimony, Trial, December 17, 2013, pp. 27). Dr. Guilino opined that the cause of death was the result of multiple gunshot wounds, and the manner of death was homicide. (N.T., id., pp. 33).

Hakeem Plummer testified that he was at Pro Lounge Bar on March 29, 2009 when the decedent was shot. (N.T., id., pp. 115). Plummer knew the decedent, who was friends with his

2

sister, and saw him at the bar that night. (N.T., id., pp. 116-7). Plummer testified that he was at the bar, drinking "shots" of alcohol, with friends before the decedent came up to him and told him that he was going to "knock [a] guy out." (N.T., id., pp. 117-19). The decedent asked Plummer to get "his back" if someone tried to help the guy. (N.T., id., pp. 119). Plummer did not see any weapons in the decedent's hands at that time. (N.T., id., pp. 119). Plummer walked outside the bar with the decedent. (N.T., id., pp. 119). Plummer testified that as he walked outside he saw the decedent throw a punch and almost instantly heard gunshots ring out. (N.T., id., pp. 120). At no time while he was outside did Plummer see the decedent with a gun. (N.T., id., pp. 120).

Leslie McClean was working at Pro Lounge Bar on March 29, 2009. (Notes of Testimony, Trial, December 18, 2013, pp.5). Around 9:30 p.m. that night, McClean was outside smoking a cigarette when he heard gunshots. (N.T., id., pp. 6). McClean testified that he provided a statement to the police after the incident. (N.T., id., pp. 8). McClean testified that he signed each page at the bottom of his statement and after talking to the detectives at the police station, he was given a chance to read over the statement and sign it, which he did. (N.T., id., pp. 10). McClean testified that he did not remember telling the police that he saw "one guy [shoot] the other and they both fell to the ground," despite that being in his statement. (N.T., id., pp.11). He also testified that he never told the detectives that he knew the male who shot the decedent from around the neighborhood, but rather, McClean testified that the detectives asked him if he knew anyone in the photographs and he merely pointed out someone he recognized. (N.T., id., pp. 12). McClean further testified that he never told the detectives that "[t]hat's the one that shot the victim," in response to the questions "[d]o you recognize anybody in these photos?" and "[w]here do you recognize the male from?"(N.T., id., pp. 12).

3

Detective James Crone was assigned to investigate the death of the decedent. (N.T., id., pp. 51). As part of the investigation Detective Crone interviewed Leslie McClean. (N.T., id., pp. 51). Detective Crone testified McClean had signed each page of his statement at the bottom after reviewing the statement in full. (N.T., id., pp. 54). Detective Crone read the statement aloud in court, which provided in summation that McClean was outside the bar smoking a cigarette when the shooting occurred; the incident occurred when two guys were scuffling and one guy shot the other; McClean identified the Defendant from a photo lineup as the individual who shot the decedent; and that the weapon used was a handgun. (N.T., id., pp. 59).

Detective Donna Jaconi testified that on March 29, 2009 at approximately 9:45 p.m., she was assigned to investigate the death of the decedent as a crime scene officer. (Notes of Testimony, Trial, December 17, 2013, pp. 82). Detective Jaconi recovered seven .32 caliber fired cartridge casings ("FCC"). (N.T., id., pp. 84).

It was stipulated that Officer DeFields, if called to testify, would testify as an expert in the field of firearms identification, comparison, and examination, and would testify that he examined the ballistics in the case and found to a reasonable degree of scientific certainty that there were seven FCCs, and their caliber was .32 automatic. (N.T., id., pp. 20). Additionally, Officer DeFields would testify that there were three .32 caliber full-metal jacket bullets recovered from the decedent. The FCCs and the bullets were all fired from the same firearm. (N.T., id., pp. 20).

Detective Thorsten Lucke testified as an expert in recovery of surveillance video and forensic analysis of surveillance. (N.T., id., pp. 54). Detective Lucke prepared a compilation video of the video surveillance of 6332 Germantown Avenue at the Pro Lounge Bar. (N.T., id.,

4

pp. 56). Detective Lucke testified that the video footage depicted the Defendant walking up to the Pro Lounge Bar's entrance, looking inside the bar, and then standing off to the side of the bar door's entrance. (N.T., id., pp. 60). From inside the bar, the video shows the decedent stand up from the bar and walk outside. (N.T., id., pp. 60). The decedent walks to where the Defendant is standing and swings at the Defendant. (N.T., id., pp. 65-67). The video depicts a gun in the Defendant's hand shortly after being punched and in slow motion a flash is seen going past the decedent's leg. (N.T., id., pp. 68-69).

## ANALYSES

On appeal, the Defendant claims that the adjudication of guilt was based on insufficient evidence. Specifically, the Defendant contends that it was unreasonable for the fact finder to infer beyond a reasonable doubt that the Defendant possessed the malice for murder when he was suddenly attacked by the victim without any provocation or reason and it was unclear who brought the gun to the scene.

Whether there was sufficient evidence to support a jury's findings to this effect, the court is to consider whether the evidence, viewed in the light most favorable to the Commonwealth, is sufficient to enable a reasonable jury to find every element of the crime beyond a reasonable doubt. Com. v. Cousar, 593 Pa. 204, 217, 928 A.2d 1025, 1029 (2007). In applying this standard, the court may not reweigh the evidence and substitute its judgment for that of the fact-finder. Id. The Commonwealth may sustain its burden by means of wholly circumstantial evidence. The trier of fact, while passing upon the credibility of witnesses and the weight of the evidence, is free to believe all, part, or none of the evidence. Id.

5

A criminal homicide constitutes murder of the third degree "when a person commits a killing which is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice." Com. v. Morris, 2008 PA Super 235, 958 A.2d 569, 576 (Pa. Super. Ct. 2008). "Malice is not merely ill-will but, rather, wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty." Id. The elements of the third-degree murder, as developed by case law, are a killing done with legal malice but without the specific intent to kill required in first-degree murder. Com. v. Seibert, 424 Pa. Super. 242, 248, 622 A.2d 361, 364 (1993). Malice may be inferred from the use of a deadly weapon on a vital part of the victim's body. Com. v. Gooding, 818 A.2d 546, 550 (Pa.Super.2003).

The Commonwealth provided sufficient evidence to prove each element of third-degree murder beyond a reasonable doubt. Third-degree murder requires a showing of malice which can be inferred from the use of a deadly weapon on a vital part of the victim's body. The evidence at trial, testimonial and video, established that the unarmed decedent confronted and punched the Defendant outside Pro Lounge Bar. The Defendant immediately pulled out a handgun and shot at the decedent seven times hitting him three times: twice in the chest and once in the stomach.

Firstly, this Court viewed the video and there is no doubt the Defendant possessed the gun. Secondly, in order to find third degree Murder as opposed to voluntary manslaughter this Court must be satisfied beyond a reasonable doubt that the Defendant was not acting under a sudden and intense passion resulting from "serious" provocation by the victim[5]. Serious provocation is defined as an event or series of events that would excite an intense passion in a reasonable person.

---

[5] 18 Pa.C.S.A. § 2503

6

"For purposes of the offense of voluntary manslaughter, 'passion' is anger and terror that reach a degree of intensity sufficient to obscure temporarily the reason of the person affected; it is any of the motions of the mind known as anger, rage, sudden resentment or terror, rendering the mind incapable of cool reflection." Commonwealth v. Laich, 566 Pa. 19, 21, 777 A.2d 1057,1061 (2001). A reasonable person would not respond to a single punch by shooting at someone seven times.

Next, the Defendant claims that the adjudication of guilt for murder is against the weight of the evidence and shocking to one's sense of justice. Specifically, the Defendant claims that there was a lack of credible evidence that the defendant possessed the malice for third degree murder, the victim was the aggressor having precipitated the violence, it was unclear who brought the gun to the scene, and the Commonwealth did not disprove the Defendant's claim of heat of passion.

The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. Commonwealth v. Johnson, 542 Pa. 384, 394, 668 A.2d 97, 101 (1995), cert. denied, 519 U.S. 827, 117 S.Ct. 90, 136 L.Ed.2d 46 (1996). Such a claim requires a new trial only when the verdict is so contrary to the evidence as to shock one's sense of justice. Com. v. Perez, 3304-08, 2009 WL 6561339 (Pa. Com. Pl. Nov. 18, 2009) aff'd, 4 A.3d 687 (Pa. Super. Ct. 2010). An appellate court cannot substitute its judgment for that of the finder of fact. Id. When the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim. Discretion is abused when the course pursued represents not merely an error of judgment, but "where the

7

judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is the result of partiality, prejudice, bias, or ill will." Com. v. Forbes, 867 A.2d 1268, 1273 (Pa. Super. 2005).

The Defendant's weight of the evidence claim fails since the verdict is not so contrary to the evidence so as to shock one's sense of justice. For the reasons, established above with regard to sufficiency of evidence, this Court finds that the verdict was not against the weight of the evidence.

## CONCLUSION

Based on the foregoing, the judgment of sentence should be affirmed.

By the Court:

Rose-Marie De-Fino-Nastasi, J.

8