J-S20024-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WILEY ESTILL GAMBREL | : | |
| | : | |
| Appellant | : | No. 1228 WDA 2018 |

Appeal from the Judgment of Sentence Entered July 18, 2018
In the Court of Common Pleas of Fayette County Criminal Division at
No(s):  CP-26-CR-0001777-2017

BEFORE:  GANTMAN, P.J.E., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED JUNE 19, 2019**

Wiley Estill Gambrel appeals from the judgment of sentence entered on July 18, 2018, following his jury trial convictions for third-degree murder and related offenses. He challenges the sufficiency and weight of the evidence. We affirm.

The trial court summarized the factual history of this case as follows:

On July 17, 2017, [Gambrel] went to the residence of James Plance (hereinafter Victim) and his girlfriend, Deana Hughes located at 280 Ringer Road, Georges Township, Fayette County Pennsylvania. Once at the residence, the three individuals began to imbibe alcohol and use crack cocaine. The individuals continued indulging in these activities until the early morning hours of July 18, 2017.

Hughes testified that in the early hours of July 18, 2017, Victim and Hughes were in the kitchen of the residence while [Gambrel] was outside at his van; Hughes stated that [Gambrel] walked in with a firearm and pointed it at Victim. [Gambrel] allegedly shot Victim once in the head; then Hughes and [Gambrel] wrapped the corpse in a tarp, put it in a box and transported the corpse to

[Gambrel's] garage located at 3540 Morgantown Road, Georges Township, Fayette County Pennsylvania. [Gambrel] and Hughes then returned to the residence and attempted to clean up Victim's blood that was left in the kitchen. After the attempted cleaning, Hughes asked to be taken to her aunt's residence and [Gambrel] complied. Once at her aunt's residence, the police were contacted and informed of the events that transpired.

After his apprehension, [Gambrel] was transported to the Uniontown State Police Barracks and taken into an interview room for the purposes of questioning. [Gambrel] was read his *Miranda* rights at 14:18 on July 18, 2017, and at this time, he requested a lawyer. Trooper Sizer then asked [Gambrel] preliminary questions as well as public safety questions, such as, where the firearm was located. [Gambrel] indicated that the firearm was in his van. [Gambrel] was then escorted from the interview room and made aware of possible charges against him; at this point, [Gambrel] changed his mind and decided that he wished to waive his right to an attorney. [Gambrel] was then re-read his *Miranda* rights at 14:30, at that time he signed the waiver for said rights and began talking to Troopers Sizer and Mrosko where he made a full, detailed, confession where he admitted that he shot the Victim.

Trial Court Opinion, filed 8/21/18, at 1-2 (unpaginated).

The jury convicted Gambrel of third-degree murder, abuse of corpse, tampering with or fabricating physical evidence, and persons not to possess, use, manufacture, control, sell or transfer firearms.[1] The trial court sentenced Gambrel to serve consecutive sentences of 17½ to 35 years' imprisonment for third-degree murder, four and one-half to nine years' imprisonment for the firearm conviction, and one to two years' imprisonment for each of the abuse of corpse and tampering with evidence convictions. Gambrel filed a post-sentence motion challenging the weight and sufficiency of the evidence, as

---

[1] 18 Pa.C.S.A. §§ 2502(c), 5510, 4910(1), and 6105(a)(1), respectively.

well as the sentence. The trial court denied the motion and this timely appeal followed.

Gambrel presents the following issues on appeal:

I.     Whether the evidence was legally and factually sufficient to prove that [Gambrel] committed the crime of murder in the third degree when the Commonwealth failed to prove, beyond a reasonable doubt, that [Gambrel] killed the victim, James Plance, or in the alternative, that [Gambrel] acted with malice aforethought.

II.    Whether the verdict as to murder of the third degree was against the weight of the evidence when the verdict was so contrary to the evidence as to shock one's sense of justice.

Gambrel's Br. at 4 (answers omitted).

When reviewing a challenge to the sufficiency of the evidence, we view the facts in the light most favorable to the Commonwealth as verdict winner, with all reasonable inferences in the Commonwealth's favor. *Commonwealth v. Sweitzer*, 177 A.3d 253, 257 (Pa.Super. 2017). Our standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Edwards*, 177 A.3d 963, 969 (Pa.Super. 2018).

In order to sustain a conviction for third-degree murder, the Commonwealth must prove beyond a reasonable doubt two elements: (1) that the defendant killed another person and (2) that the defendant killed with malice aforethought. *See Commonwealth v. Fisher*, 80 A.3d 1186, 1191 (Pa. 2013). Malice is present where there is "not only a particular ill-will, but . . . [also a] wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty. . . ." *Id.* (quoting

*Commonwealth v. Santos*, 876 A.2d 360, 363 (Pa. 2005)) (alteration in *Fisher*). Malice may be inferred where the defendant uses a "deadly weapon on a vital part of the [victim's] body." *Commonwealth v. Seibert*, 622 A.2d 361, 364 (Pa.Super. 1993).

Here, Gambrel maintains that "the evidence presented at the trial was insufficient to enable the trier of fact to find every element of the offense of Third Degree Murder beyond a reasonable doubt." Gambrel's Br. at 8. We disagree. The evidence was sufficient to satisfy both elements beyond a reasonable doubt.

First, the Commonwealth presented more than enough evidence to prove that Gambrel killed the victim. Gambrel admitted in his confession that he shot the victim, and the forensic pathologist testified that the victim died from a gunshot wound to the head. *See* N.T., Trial, 7/11/18, at 37, 44; *see also* Commonwealth's Ex. B (Transcription of Gambrel's Interview) at 47. Additionally, this evidence is supported by testimony from Hughes, who was present when the victim was shot in the head. *See* N.T., Trial, 7/10/18, at 121. Collectively, this evidence was sufficient to satisfy the first element of third-degree murder, that Gambrel killed the victim.

Next, Gambrel claims that there was insufficient evidence to support a finding of malice. He maintains that text messages between the victim and Gambrel show "that the victim and [Gambrel] were 'fine' in the time period after the message was sent and received, and the time of the shooting." Gambrel's Br. at 9 (citing to N.T., 7/10/18, at 181). We are unpersuaded.

Here, the evidence was sufficient to support an inference of malice because Gambrel used a deadly weapon on a vital part of the victim's body. *See Seibert*, 622 A.2d at 364; *see also Commonwealth v. Johnson*, 42 A.3d 1017, 1026 (Pa. 2012) (stating injuries to vital parts of victim's body included head and chest). Additionally, viewing the evidence in the light most favorable to the Commonwealth, Gambrel's actions were reckless. Prior to shooting the victim in the head, the victim asked Gambrel, "[R]eally, are you going to point that gun at me?" N.T., 7/10/18, at 120. In response, Gambrel said "yes" and then proceeded to shoot the victim in the head. *Id.* Thus, Gambrel's own statements express his reckless behavior in killing the victim.

Viewing the evidence in the light most favorable to the Commonwealth, the victim tried to end his friendship with Gambrel in a text that read, "I think it best to end the friendship. Too much shit going on with you. Sorry, don't know what else to do." N.T., Trial, 7/13/18, at 92. Hughes testified that Gambrel and the victim's friendship was okay after this message. N.T., 7/10/18, at 181. The jury could disbelieve Hughes' testimony. Even if the jury believed her testimony, this evidence all relates to a possible motive for the killing and even in absence of any evidence of motive, the evidence of malice was sufficient. Nonetheless, evidence that the victim and Gambrel were "fine" prior to the shooting does not negate the Commonwealth's evidence of malice. *See Seibert*, 622 A.2d at 366 (concluding that evidence of defendant's friendship with victim "does not prove that Seibert's recklessness did not reach

to the level of malice" sufficient to prove third-degree murder). The evidence was sufficient to prove malice. Thus, Gambrel's sufficiency claims fail.

Next, Gambrel challenges the weight of the evidence. He maintains that "[t]he evidence and testimony at trial shows that at a minimum, there is a reasonable likelihood that Ms. Hughes, not [Gambrel], killed [the victim]." Gambrel's Br. at 15-16.

We review a weight claim for an abuse of discretion. ***Commonwealth v. Widmer***, 744 A.2d 745, 753 (Pa. 2000). "[A]n appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence." ***Id.*** In determining whether to deny or grant a weight claim, a defendant must prove to the trial court that the evidence is "so tenuous, vague and uncertain that the verdict shocks the conscience of the court." ***Commonwealth v. Windslowe***, 158 A.3d 698, 712 (Pa.Super. 2017) (quoting ***Commonwealth v. Mucci***, 143 A.3d 399, 411 (Pa.Super. 2016)).

Here, the trial court denied Gambrel's weight claim and maintained that Gambrel's argument only succeeded if the jury believed Gambrel's self-serving testimony. ***See*** Trial Court Pa.R.A.P. 1925(a) Opinion, filed 10/22/18, at 4 (unpaginated). The court concluded that "[t]here was overwhelming evidence that supported the finding that [Gambrel] was guilty of the crimes charged." ***Id.*** We agree.

While Hughes's testimony contrasted with Gambrel's testimony in certain aspects, the jury as fact-finder was free to believe all, part or none of

- 6 -

each witness's testimony. ***See Commonwealth v. Clemons***, 200 A.3d 441, 462 (Pa. 2019). Finding Gambrel guilty on all counts, the jury evidently believed Hughes' version of what happened the day of the murder, notably that Gambrel killed the victim. Additional evidence of Gambrel's guilt included his taped confession and the testimony of Albert Lattanzi, a forensic scientist, who testified that gunshot residue was found on Gambrel's right and left palm, and back of his left hand. ***See*** N.T., 7/11/18 (Afternoon Session), at 8, 20. In view of the totality of the evidence, the trial court did not abuse its discretion in denying the weight claim. Therefore, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/19/2019