J. S67007/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :      IN THE SUPERIOR COURT OF
                             :             PENNSYLVANIA
             v.              :
                             :
DIEGO RIVERA,              :          No. 1963 EDA 2014
                             :
            Appellant      :


Appeal from the Judgment of Sentence, June 13, 2014,
in the Court of Common Pleas of Philadelphia County
Criminal Division at Nos. CP-51-CR-0013542-2012,
CP-51-CR-0013543-2012


BEFORE: FORD ELLIOTT, P.J.E., RANSOM, J. AND STEVENS, P.J.E.*


MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED October 5, 2016**

      Diego Rivera appeals from the judgment of sentence of June 13, 2014, following his conviction of third-degree murder, robbery, aggravated assault and related charges, including weapons offenses. Appointed counsel, Earl G. Kauffman, Esq., has filed a petition to withdraw and accompanying **Anders**[1] brief. After careful review, we grant the withdrawal petition and affirm the judgment of sentence.

      The facts of this case, as gleaned from the trial transcripts, may be summarized as follows. On September 1, 2012, Christopher Thompson

---

* Former Justice specially assigned to the Superior Court.

[1] **See Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. McClendon**, 434 A.2d 1185 (Pa. 1981).

("Thompson") was "hanging out" on the corner of Rosehill and Somerset streets in Philadelphia selling drugs. (Notes of testimony, 3/11/14 at 122-123.) Thompson testified that he had been "working that corner" for a couple of months. (*Id.* at 123.) Thompson was engaged in a drug transaction with a customer when appellant and an unidentified black man approached him. (*Id.* at 125.) Thompson described appellant as Puerto Rican. (*Id.*) Appellant and his cohort began cursing at Thompson and telling him to "get the F off the block." (*Id.* at 125, 128.) The black male punched Thompson while appellant hit him over the head with a semi-automatic handgun. (*Id.* at 125-126.) They took Thompson's money and drugs and told him to leave. (*Id.* at 128-129.) One of them told Thompson, "whoever you are working for, show them I did this to you." (*Id.* at 129.) "Show them I did this to you and tell them we are coming back in a couple hours." (*Id.*) Thompson described appellant as 5'8" to 5'9", in his early 20s with a short beard and a neck tattoo. (*Id.* at 131-132.)

Thompson returned to the area a few hours later. (*Id.* at 134.) Thompson was standing on the corner of Rosehill and Somerset, talking to a girl, when he saw appellant. (*Id.* at 134-135.) Appellant was walking toward Thompson, but then crossed the street and walked toward the Yadi Market on Somerset. (*Id.* at 135.) Shortly thereafter, Thompson heard gunshots and hid behind a car. (*Id.* at 136.) Thompson peeked

through the car window and saw appellant firing shots. (*Id.*) Appellant then ran down Rosehill and jumped into a car. (*Id.* at 137, 151.) After the shooting, Thompson observed the victim, Kareem Tomlin, lying on the ground with blood coming from his head. (*Id.* at 138.) Thompson gave a statement to police and picked out appellant as the shooter in a photo array. (*Id.* at 139-144.) Thompson also identified appellant at trial. (*Id.* at 133.)

Yahaira Polanco ("Polanco") testified that on September 1, 2012, she was walking up Somerset Street towards her mother's house when she heard gunshots. (*Id.* at 194-197.) The shots were coming from the direction of Yadi Market. (*Id.* at 199.) In a statement to police, Polanco identified appellant as the gunman and picked his photo out of a photo array. (*Id.* at 217-219, 241-242.) Polanco told police that when the shooting started, she grabbed her kids and ran inside her mother's house. (*Id.* at 240-241.) Through her mother's door window, Polanco could see appellant firing shots. (*Id.* at 241.) Afterwards, Polanco went outside and saw the victim lying on the ground bleeding from his head. (*Id.*) Polanco identified the victim as Kareem Tomlin, known as "Reem." (*Id.* at 243.)[2]

---

[2] At trial, Polanco refused to identify appellant as the shooter. She admitted that she was nervous about testifying and was worried about being a material witness in a homicide case. (*Id.* at 208.) Her family still lives in the neighborhood. (*Id.*) Polanco's prior inconsistent statement to police, identifying appellant as the shooter, was admitted as substantive evidence under Pa.R.E. 803.1(1)(B), a writing signed and adopted by the declarant.

Police recovered video surveillance footage from two locations, Yadi Market and also a private residence on Rosehill Street. (Notes of testimony, 3/12/14 at 111-112, 118.) The video captured appellant's altercation with Thompson as well as appellant running from the scene of the shooting and getting into a white car. (*Id.* at 130-146; Commonwealth's Exhibit C-40.) The incident with Thompson occurred at 11:21 a.m. on September 1, 2012, and the shooting outside the grocery store occurred at 4:07 p.m. (*Id.* at 132, 141.) In addition, security cameras captured appellant leaving Coleman Hall, a halfway house, on September 1, 2012. (*Id.* at 74.) Appellant had a social pass to visit his mother from 10:00 a.m. to 6:00 p.m. (*Id.* at 77, 101.) Appellant signed out at 9:47 a.m. and never came back. After he failed to return to the facility by 6:00 p.m. as scheduled and was declared an absconder, counselors discovered that appellant had cleaned out his room. (*Id.* at 101-102.) The shift supervisor spoke with appellant's stepfather who said he had not seen appellant that day. (*Id.* at 101.)

On September 4, 2012, the fugitive task force was assigned to locate and apprehend appellant. (*Id.* at 158-159.) A wanted poster was issued with appellant's picture and information. (*Id.* at 159-160.) Detectives located appellant on September 9, 2012, but he fled through a bathroom skylight. (*Id.* at 162-163.) On September 11, 2012, appellant was apprehended at a different location. (*Id.* at 164-165.) During the ten days

between the shooting and his apprehension, appellant had covered up the distinctive tattoo on his neck, "Who Wants Gunplay," with another tattoo. (*Id.* at 82-85, 165-166; Commonwealth's Exhibits C-34A, C-34B.)

The victim died of a single perforating gunshot wound to his head. (Notes of testimony, 3/11/14 at 184.) The bullet entered through the back of his head and exited out the front, causing extensive injuries to his brain. (*Id.*) The trajectory of the bullet was from back to front, right to left, and traveling slightly upward. (*Id.* at 189-191.) There was no soot or stipple, meaning that the gun was fired from beyond 2½ feet. (*Id.* at 188-189.) Police recovered seven fired cartridge cases ("FCC's"), all fired from the same .9 millimeter firearm. (Notes of testimony, 3/12/14 at 51.) Police also recovered two bullets, which were fired from the same .9 millimeter firearm. (*Id.* at 55-56.)[3] Police did not find the actual firearm that was used. (*Id.* at 56.)

On March 13, 2014, following a three-day jury trial, at case number 0013542 of 2012 (charging appellant with the murder of Kareem Tomlin), appellant was found guilty of third-degree murder, carrying a firearm without a license, carrying a firearm in public in Philadelphia, and possession

---

[3] Officer Gregory Welsh, the Commonwealth's expert in the area of firearms examination and identification, testified that it is impossible to compare an FCC to a bullet. (*Id.* at 56.) Therefore, while the FCCs all came from the same firearm, and the bullets came from the same firearm, Officer Welsh could not testify with certainty that both the FCCs and the bullets came from the same firearm. (*Id.*)

of an instrument of crime ("PIC"). (Notes of testimony, 3/13/14 at 152-153.) At case number 0013543 of 2012 (charging appellant with the robbery of Thompson), appellant was found guilty of robbery, aggravated assault, criminal conspiracy, carrying a firearm in public in Philadelphia, carrying a firearm without a license, and PIC. (**Id.** at 153-154.) On June 13, 2014, the trial court imposed an aggregate sentence of 30 to 60 years' incarceration.[4]

On June 25, 2014, appellant filed an untimely post-sentence motion which was denied as untimely on June 27, 2014.[5] A timely notice of appeal was filed on July 9, 2014. On October 1, 2014, this court granted trial counsel's petition to withdraw and directed the trial court to determine whether appellant was eligible for court-appointed counsel. **Commonwealth v. Rivera**, No. 1963 EDA 2014, **per curiam** order (Pa.Super. filed October 1, 2014). The trial court appointed Del Atwell, Esq., to represent appellant on appeal, and Attorney Atwell entered his

---

[4] Appellant received 20 to 40 years for third-degree murder, 5 to 10 years for robbery, and 2½ to 5 years on two of the firearms charges, to run consecutively for an aggregate sentence of 30 to 60 years' imprisonment. (Notes of testimony, 6/13/14 at 38-39.) On the remaining charges, appellant received either concurrent sentences or no further penalty. (**Id.**)

[5] Pennsylvania Rule of Criminal Procedure 720 states, in relevant part: "(1) Except as provided in paragraphs (C) and (D), a written post-sentence motion shall be filed no later than 10 days after imposition of sentence." Pa.R.Crim.P. 720(A)(1). Therefore, appellant had until Monday, June 23, 2014, 10 days after sentencing, to file any post-sentence motions. Appellant's post-sentence motion was not filed until June 25, 2014, two days late.

appearance on October 6, 2014. On November 7, 2014, appellant was ordered to file a concise statement of errors complained of on appeal within 21 days pursuant to Pa.R.A.P. 1925(b). Appellant failed to comply, but was given an extension until March 24, 2015. In a letter to Attorney Atwell dated March 10, 2015, the trial court noted that after he missed the November 28, 2014 deadline, he was given an extension until February 6, 2015, but failed to file a Rule 1925(b) statement. All transcripts were available as of July 16, 2014. Despite the trial court's admonitions, Attorney Atwell failed to comply with the trial court's Rule 1925 order. On April 15, 2015, the trial court filed a Rule 1925(a) opinion, finding all issues waived. Subsequently, on April 29, 2015, Attorney Atwell filed a Rule 1925(b) statement together with a motion for extension of time. On July 31, 2015, this court granted Attorney Atwell's motion to withdraw and directed the trial court to appoint substitute counsel to represent appellant in this appeal.

On September 17, 2015, current counsel, Attorney Kauffman, entered his appearance. On February 4, 2016, the appeal was dismissed for failure to file a brief. However, on February 16, 2016, this court granted appellant's application to reinstate the appeal and ordered appellant to file a brief by March 14, 2016. On April 13, 2016, well beyond this court's deadline, Attorney Kauffman filed an ***Anders*** brief. An application to withdraw was filed on April 14, 2016. On April 22, 2016, this court ordered

Attorney Kauffman to provide a copy of the letter sent to appellant informing him of his right to retain counsel or proceed **pro se** in this appeal, which was not attached to his petition to withdraw as required by **Commonwealth v. Millisock**, 873 A.2d 748, 752 (Pa.Super. 2005). Attorney Kauffman complied on May 2, 2016, attaching a copy of the letter to appellant informing him of his rights under **Anders**.

In his **Anders** brief, Attorney Kauffman reviewed the following issues before concluding that the instant appeal was wholly frivolous:

> [1.] Whether the appellant's sentence was an illegal sentence, and whether the proceedings were invalid[?]
>
> [2.] Whether the trial court's jury instruction was inadequate regarding the cooperating witness charge to the jury[?]
>
> [3.] Judgment of acquittal[.]
>
> [4.] Whether the verdict was against the sufficiency of the evidence[?]
>
> [5.] Whether the verdict was against the weight of the evidence[?]
>
> [6.] Whether trial counsel and first appellate counsel were ineffective, when the third prong of the test was not met[?]

**Anders** brief at 5.

Counsel having filed a petition to withdraw, we reiterate that "[w]hen presented with an **Anders** brief, this court may not review the merits of the underlying issues without first passing on the request to withdraw."

- 8 -

*Commonwealth v. Daniels*, 999 A.2d 590, 593 (Pa.Super. 2010), citing

*Commonwealth v. Goodwin*, 928 A.2d 287, 290 (Pa.Super. 2007)

(*en banc*) (citation omitted).

> In order for counsel to withdraw from an appeal pursuant to *Anders*, certain requirements must be met, and counsel must:
>
> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Id.*, quoting *Commonwealth v. Santiago*, 978 A.2d 349, 361 (Pa. 2009).

Upon review, we find that Attorney Kauffman has complied with all of the above requirements. In addition, Attorney Kauffman served appellant a copy of the *Anders* brief, and advised him of his right to proceed *pro se* or hire a private attorney to raise any additional points he deemed worthy of this court's review. Appellant has not responded to counsel's motion to

- 9 -

withdraw.  As we find the requirements of **Anders** and **Santiago** are met, we will proceed to the issues on appeal.[6]

Appellant's first issue concerns his sentence of 30-60 years' imprisonment.  As Attorney Kauffman correctly observes, appellant's sentence was legal.  (**Anders** brief at 12.)  Furthermore, any discretionary sentencing challenge would be waived for failure to raise it in the trial court. "Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or raised in a motion to modify

---

[6] As described above, Attorney Atwell failed to timely comply with the trial court's Rule 1925 order, which is considered **per se** ineffectiveness of counsel and ordinarily this court would have to remand for a supplemental trial court opinion.  **See** Pa.R.A.P. 1925(c)(3) ("If an appellant in a criminal case was ordered to file a Statement and failed to do so, such that the appellate court is convinced that counsel has been **per se** ineffective, the appellate court shall remand for the filing of a Statement **nunc pro tunc** and for the preparation and filing of an opinion by the judge."); **Commonwealth v. Veon**, 109 A.3d 754, 762 (Pa.Super. 2015), **appeal granted in part on other grounds**, 121 A.3d 954 (Pa. 2015) ("Where the trial court does not address the issues raised in an untimely 1925(b) statement, we remand to allow the trial court an opportunity to do so."), citing **Commonwealth v. Thompson**, 39 A.3d 335, 340 (Pa.Super. 2012). The untimely filing of a Rule 1925(b) statement is considered the equivalent of a complete failure to file; both represent **per se** ineffectiveness of trial counsel.  **Commonwealth v. Burton**, 973 A.2d 428, 432-433 (Pa.Super. 2009) (**en banc**).  Nevertheless, it is not necessary to remand in this case where all of appellant's issues are either waived, not cognizable on direct appeal, or without merit.  As the Commonwealth observes, to remand for the trial court to address claims that counsel has deemed frivolous would serve little purpose.  (Commonwealth's brief at 15.)  In the same vein, to remand for a Rule 1925(b) statement **nunc pro tunc** would be pointless because counsel would simply file a statement of intent to file an **Anders** brief under Rule 1925(c)(4).  **Id.**; **see** Pa.R.A.P. 1925(c)(4) ("In a criminal case, counsel may file of record and serve on the judge a statement of intent to file an **Anders**/**McClendon** brief in lieu of filing a Statement.").

the sentence imposed at that hearing." ***Commonwealth v. Hyland***, 875 A.2d 1175, 1183 (Pa.Super. 2005), ***appeal denied***, 890 A.2d 1057 (Pa. 2005), citing ***Commonwealth v. Mann***, 820 A.2d 788, 794 (Pa.Super. 2003), ***appeal denied***, 831 A.2d 599 (Pa. 2003). Issues not raised in the lower court are waived on appeal. Pa.R.A.P. 302(a).

> A written post-sentence motion to reconsider sentence must be filed no later than ten days after imposition of sentence. Pa.R.Crim.P. Rule [720], 42 Pa.C.S.A. "The failure to do so waives any complaint concerning sentence that does not involve the lawfulness of the sentence itself." ***Commonwealth v. Koziel***, 289 Pa.Super. 22, 432 A.2d 1031 (1981). The purpose of the rule is to allow the sentencing court the first opportunity to modify its sentence. ***Id.*** at 24-25, 432 A.2d at 1032.

***Commonwealth v. Magnum***, 654 A.2d 1146, 1148 (Pa.Super. 1995) (footnote omitted).

Here, appellant did not present a discretionary sentencing claim to the trial court, either at the sentencing hearing or in his untimely post-sentence motion. Therefore, any challenge to the discretionary aspects of appellant's sentence would be waived on appeal.[7]

---

[7] In his ***Anders*** brief, Attorney Kauffman incorrectly states that trial counsel raised a sentencing claim in his untimely post-sentence motion. (***Anders*** brief at 17.) From our review of the certified record, no such claim was advanced. (No. 13542-2012, "Motion for Post Trial Relief" filed 6/25/14 at 1-2; Docket #4.) At any rate, appellant's untimely post-sentence motion is a legal nullity and does not preserve any issue for appeal. ***See Commonwealth v. Wrecks***, 931 A.2d 717, 719 (Pa.Super. 2007) (observing that "[a]n untimely post-sentence motion does not preserve issues for appeal.") (citation omitted); ***Commonwealth v. Bilger***, 803 A.2d

The second issue presented for our review is the adequacy of the trial court's jury instruction relating to Thompson and potential bias. It was established at trial that Thompson had two open cases for possession with intent to deliver. (Notes of testimony, 3/11/14 at 159-160.) Following trial, during the charging conference, the trial court offered to instruct the jury that Thompson's testimony should be received with caution: "Certain testimony subject to special scrutiny and you should examine closely and carefully and receive with caution the testimony of Christopher Thompson if you find that he believed he would receive a benefit from the Commonwealth for his testimony." (Notes of testimony, 3/12/14 at 203-204.) Defense counsel replied, "That's fine, Your Honor," and the following day, the trial court gave the instruction. (***Id.*** at 204; notes of testimony, 3/13/14 at 137-138.) At no time did defense counsel object to the instruction as given or request a different instruction. Therefore, the matter is waived. ***See*** Pa.R.Crim.P. 647(C) ("No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate. All such objections shall be made beyond the hearing of the jury."); ***Commonwealth v. Corley***, 638 A.2d 985, 990 (Pa.Super. 1994), ***appeal denied***, 647 A.2d 896 (Pa. 1994)

---

199, 202 (Pa.Super. 2002), ***appeal denied***, 813 A.2d 835 (Pa. 2002) (recognizing that post-sentence motion filed more than ten days after sentence imposed is legal nullity).

("A defendant must object to a jury charge at trial, lest his challenge to the charge be precluded on appeal." (citations omitted)).

Appellant's third and fourth issues relate to the sufficiency of the evidence to support the verdict.[8]

When considering a challenge to the sufficiency of the evidence, this court must view the evidence presented in a light most favorable to the Commonwealth, the verdict winner, and draw all reasonable inferences therefrom. *Commonwealth v. Ketterer*, 725 A.2d 801, 803 (Pa.Super. 1999). We must then determine whether the evidence was sufficient to permit the fact-finder to conclude that all of the elements of the crimes charged were proven beyond a reasonable doubt. *Id.* Any question of doubt is for the fact-finder, unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances. *Id.* at 804.

> The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire trial record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

---

[8] As Attorney Kauffman observes, the trial court did grant judgment of acquittal as to aggravated assault as a first-degree felony, intent to cause serious bodily injury to Thompson. (*Anders* brief at 14; notes of testimony, 3/12/14 at 200-201.) The trial court charged the jury on aggravated assault as a second-degree felony, causing bodily injury with a deadly weapon. (*Id.*)

*Commonwealth v. George*, 705 A.2d 916, 918 (Pa.Super. 1998), *appeal denied*, 725 A.2d 1218 (Pa. 1998), quoting *Commonwealth v. Valette*, 613 A.2d 548, 549 (Pa. 1992) (citations and quotation marks omitted).

First, we address the sufficiency of the evidence to sustain appellant's conviction for murder in the third degree.

> Under 18 Pa.C.S.A. § 2502(c), third-degree murder encompasses all forms of murder which do not constitute first-degree murder (intentional killing) or second-degree murder (killing committed during the perpetration of a felony). In the context of third-degree murder, the Commonwealth need not establish a specific intent to kill, or even a specific intent to harm the victim. The Commonwealth need only establish a killing with malice, *i.e.*, the death of another brought about by an intentional act which indicates a wickedness of disposition, hardness of heart, wantonness, cruelty, recklessness of consequences, or a mind lacking regard for social duty. *Commonwealth v. Young*, 494 Pa. 224, 227, 431 A.2d 230, 232 (1981) (malice found where defendant pointed loaded gun at victim and gun discharged, even if it were fired accidentally and defendant meant only to scare the victim); *Commonwealth v. Seibert*, 424 Pa.Super. 242, 251, 622 A.2d 361, 365-66 (1993), *appeal denied*, 537 Pa. 631, 642 A.2d 485 (1994). Malice is established where the defendant's intentional act indicates that the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily harm. *Seibert*, *supra* at 250, 622 A.2d at 364. Malice may be inferred from all of the circumstances surrounding the defendant's conduct, and may be inferred from the use of a deadly weapon on a vital part of the body. *Commonwealth v. Cruz-Centeno*, 447 Pa.Super. 98, 106, 668 A.2d 536, 540 (1995), *appeal denied*, 544 Pa. 653, 676 A.2d 1195 (1996).

- 14 -

*Commonwealth v. Johnson*, 719 A.2d 778, 785 (Pa.Super. 1998) (*en banc*), *appeal denied*, 739 A.2d 1056 (Pa. 1999).

Instantly, it was established that appellant fired off seven rounds from a .9 millimeter semi-automatic handgun, striking the decedent in the back of the head, killing him instantly. The apparent motive for appellant's actions was to gain territory for drug sales. Thompson and Polanco both picked appellant's photo out of a photo array and identified him as the gunman. Appellant was also seen on video surveillance cameras fleeing the scene. Furthermore, appellant purposely eluded police, which is evidence of consciousness of guilt. *See Commonwealth v. Harvey*, 526 A.2d 330, 334 (Pa. 1987) ("It is a well-settled rule of law that if a person has reason to know he is wanted in connection with a crime, and proceeds to flee or conceal himself from the law enforcement authorities, such evasive conduct is evidence of guilt and may form a basis, in connection with other proof, from which guilt may be inferred." (citations omitted)). Appellant even went so far as to try to cover up his distinctive neck tattoo, "Who Wants Gunplay." Clearly, the evidence was overwhelmingly sufficient to prove that appellant killed the victim and did so with malice aforethought.

The evidence was sufficient to sustain the jury's verdict on the other charges as well, including criminal conspiracy, robbery, and aggravated assault. Thompson testified that appellant and an unknown accomplice beat him up and threatened him, telling him to "get the F off the block."

Appellant hit him over the head with a semi-automatic handgun. Thompson testified that they acted in concert; "It was both of them coming at me." (Notes of testimony, 3/11/14 at 129.) They also took Thompson's money and drugs. (*Id.* at 128.) Thompson's account was corroborated by video footage of the incident.

Regarding the firearms charges, the Commonwealth introduced proof that appellant was not licensed to carry a firearm. (Notes of testimony, 3/12/14 at 197.) The jury could reasonably infer that appellant possessed a firearm, an instrument of crime, and did so with intent to employ it criminally. Therefore, the evidence was also sufficient to support the charge of PIC. Based on the totality of the evidence, viewed in a light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences, we agree with Attorney Kauffman that any sufficiency challenge would be patently meritless.

In his fifth issue, Attorney Kauffman addresses the weight of the evidence. However, this issue was not preserved in the trial court. Accordingly, appellant's weight claim is waived. Pa.R.Crim.P. 607(A); *Commonwealth v. O'Bidos*, 849 A.2d 243, 252 (Pa.Super. 2004), *appeal denied*, 860 A.2d 123 (Pa. 2004) (weight of the evidence claims must be raised via oral, written, or post-sentence motions in the trial court for the issue to be preserved for appeal (citations omitted)). While a weight claim

was raised in appellant's untimely post-sentence motion, that does not preserve the issue for appeal. **See Wrecks**, 931 A.2d at 719.

Finally, in his sixth issue for appeal, Attorney Kauffman questions whether prior counsel were ineffective for failing to file a timely post-sentence motion and failing to comply with Pa.R.A.P. 1925(b). (**Anders** brief at 16-17.) These claims are not cognizable on direct appeal and must await collateral review. **Commonwealth v. Grant**, 813 A.2d 726 (Pa. 2002) (defendants should wait until the collateral review phase to raise claims of ineffective assistance of counsel); **Commonwealth v. Holmes**, 79 A.3d 562, 576 (Pa. 2013) (reaffirming **Grant** and holding that, absent specific circumstances not applicable here, "claims of ineffective assistance of counsel are to be deferred to PCRA[9] review; trial courts should not entertain claims of ineffectiveness upon post-verdict motions; and such claims should not be reviewed upon direct appeal." (footnote omitted)).

For the reasons discussed above, we determine that appellant's issues on appeal are wholly frivolous and without merit or not cognizable on direct appeal. Furthermore, after our own independent review of the record, we are unable to discern any additional issues of arguable merit. Therefore, we will grant Attorney Kauffman's petition to withdraw and affirm the judgment of sentence.

---

[9] Post-Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546.

Petition to withdraw granted.  Judgment of sentence affirmed.


Ransom, J. joins the Memorandum.

Stevens, P.J.E. concurs in the result.

Judgment Entered.

JosephD.Seletyn,Esq.
Prothonotary

Date: 10/5/2016