J-A09014-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LORENZO LAKINS | : | |
| | : | |
| Appellant | : | No. 1398 EDA 2021 |

Appeal from the Judgment of Sentence Entered May 7, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005652-2018

BEFORE:   NICHOLS, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED JUNE 14, 2022**

Appellant Lorenzo Lakins appeals from the judgment of sentence imposed following his convictions for third-degree murder, possession of an instrument of crime (PIC), carrying a firearm by a prohibited person, and carrying a firearm in public in Philadelphia.[1]   Appellant challenges the sufficiency and weight of the evidence and the discretionary aspects of his sentence.  We affirm.

The trial court summarized the underlying facts of this matter as follows:

At approximately 4:00 a.m., on June 4, 2017, [Appellant] and the decedent, Jalil Griffin, were arguing outside of Train Station Pizza in the area of 56th and Market streets.  Griffin was telling [Appellant] he did not have any money on him, while [Appellant] was insisting that Griffin did have money.  [Appellant] told Griffin, "I'm not playing, I want that mitt, give me that mitt in your

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2502(c), 907(a), 6105(a)(1), and 6108, respectively.

pocket." Griffin then pulled out a pill bottle and another object from his pockets and tried to hand them over to [Appellant]. [Appellant] told Griffin "no, I don't want that, I want those fifties that I just seen, I want that mitt." [Appellant] then pulled out a black gun with a long barrel and shot Griffin one time in the chest. Griffin then ran into Train Station Pizza, telling witnesses inside the store, "I'm shot." Griffin was transported by ambulance to Presbyterian Medical Center, where at 4:22 a.m. he was pronounced dead.

Trial Ct. Op., 8/17/21, at 1-2 (citations and footnote omitted).

On October 23, 2020, a jury convicted Appellant of all charges. On May 7, 2021, the trial court sentenced Appellant to an aggregate sentence of twenty-four to forty-eight years of incarceration.

On May 12, 2021, trial counsel filed a post-sentence motion preserving a challenge to the weight of the evidence. That same day, trial counsel filed a motion to withdraw as counsel. On May 27, 2021, the trial court granted counsel's motion to withdraw, and appointed new counsel on Appellant's behalf. New counsel filed an amended post-sentence motion which incorporated the original post-sentence motion and also raised an additional claim concerning the discretionary aspects of Appellant's sentence. Am. Post Sent. Mot., 6/14/21, at 1-2. The trial court denied the motion on June 22, 2021.

Appellant timely filed a notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a Rule 1925(a) opinion addressing Appellant's claims.

On appeal, Appellant raises the following issues for our review:

1. Whether [Appellant's] convictions are against the weight of the evidence and shocking to one's sense of justice where witness Bryon Johnson identified Kevin Coffer rather than [Appellant] in a photo array, where Kevin Coffer matched the physical description of the perpetrator, where Kevin Coffer was arrested with two firearms and where [Appellant] testified and denied that he shot and killed Jalil Griffin?

2. Whether [Appellant's] convictions are based upon insufficient evidence where the Commonwealth failed to prove beyond a reasonable doubt that [Appellant] possessed the requisite malice for murder?

3. Whether the court abused its discretion where it sentenced the fifty-six-year-old Appellant to an aggregate 24-48 years of incarceration where that sentence would not make [Appellant] eligible for parole until he reached the age of eighty because a sentence of this length for a fifty-six-year-old amounts to a life sentence where the Legislature did not contemplate a life sentence of the crime of third degree murder?  Is not the aforesaid sentence excessive and contrary to the norms underlying the Sentencing Code and therefore presents a substantial question that the sentence is inappropriate?

4. Whether there is a substantial question that [Appellant's] sentence is inappropriate because it is contrary to the norms underlying the Sentencing Code where the court abused its discretion when it failed to give the proper weight to mitigating factors consisting most notably of [Appellant's] psychiatric disorder of polysubstance abuse, symptoms of a mood disorder, lack of treatment, educational deficits, early childhood domestic violence and extensive family contacts?

Appellant's Brief at 6 (formatting altered).

## Sufficiency of the Evidence

Appellant challenges the sufficiency of the evidence supporting his conviction for third-degree murder.  Appellant's Brief at 22.  In support, Appellant argues that witness "[Jamie] Bowen-Rutledge could only identify the Appellant through the video as a person she saw tying his shoes [and Byron]

Johnson's identification was equivocal and suspect because he initially identified Kevin Coffer as the shooter who was eventually taken into custody with a long barrel firearm similar to that used by the shooter." *Id.* at 23. Therefore, he concludes that the Commonwealth failed to "prove beyond a reasonable doubt that [he] killed another human being with the requisite malice to establish murder in the third degree." *Id.* (some formatting altered).

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

*Commonwealth v. Palmer*, 192 A.3d 85, 89 (Pa. Super. 2018) (citation omitted)*.*

This Court has stated:

> Murder in the third degree is an unlawful killing with malice but without the specific intent to kill. 18 Pa.C.S. § 2502(c). Malice is defined as:

> A wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured. Malice may be found where the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause serious bodily injury.
>
> Malice may be inferred by considering the totality of the circumstances.

*Commonwealth v. Dunphy*, 20 A.3d 1215, 1219 (Pa. Super. 2011) (some citations omitted and formatting altered). It is well-established that "malice may be inferred from the use of a deadly weapon on a vital part of the body." *Commonwealth v. Seibert,* 622 A.2d 361, 364 (Pa. Super. 1993) (citations omitted).

This Court has held that, "[i]n addition to proving the statutory elements of the crimes charged beyond a reasonable doubt, the Commonwealth must also establish the identity of the defendant as the perpetrator of the crimes." *Commonwealth v. Smyser*, 195 A.3d 912, 915 (Pa. Super. 2018) (citation omitted).

Finally, it is well settled that "[i]n order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient." *Commonwealth v. Garland*, 63 A.3d 339, 344 (Pa. Super. 2013) (citation omitted). "Such specificity is of particular importance in cases where . . . the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." *Id.* (citation

omitted). Failure to identify what specific elements the Commonwealth failed to prove at trial in a Rule 1925(b) statement renders an appellant's sufficiency of the evidence claim waived for appellate review. ***Id.***

Here, in his Rule 1925(b) statement, Appellant argued that the Commonwealth failed to prove the malice element for third-degree murder. ***See*** Pa.R.A.P. 1925(b) Statement, 7/26/21, at 1. In his brief, Appellant primarily focuses on the sufficiency of the Commonwealth's identification evidence. ***See*** Appellant's Brief at 22-23. However, because Appellant did not challenge the sufficiency of the identification evidence in his Rule 1925(b) statement, that claim is waived.[2, 3] ***See Garland***, 63 A.3d at 344.

With respect to Appellant's claim regarding the malice element, the trial court explained:

_____

[2] Additionally, to the extent Appellant claims that the eyewitness and identification testimony was unreliable, that claim goes to the weight, rather than the sufficiency, of the evidence. ***See Commonwealth v. Orr***, 38 A.3d 868, 874 (Pa. Super. 2011) (*en banc*) (stating that "any indefiniteness and uncertainty in the identification testimony" goes to the weight, rather than the sufficiency, of the evidence (citation omitted)).

[3] Further, beyond his boilerplate assertion that the evidence was insufficient to prove malice, Appellant does not develop this claim. We could find waiver on this basis. ***Commonwealth v. Bradley***, 232 A.3d 747, 756 (Pa. Super. 2020) (stating that "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived" (citation omitted and formatting altered)); ***see also*** Pa.R.A.P. 2119(a)-(c). In any event, the evidence establishing malice was relatively straightforward and the trial court addressed the merits of Appellant's claim in its Rule 1925(a) opinion. Therefore, we decline to find waiver. ***See Commonwealth v. Laboy***, 936 A.2d 1058, 1060 (Pa. 2007) (*per curiam*).

Here, the evidence presented at trial . . . clearly demonstrated that [Appellant] shot and killed Jalil Griffin. As to malice, Byron Johnson testified that he witnessed [Appellant] and Griffin arguing about money when [Appellant] pulled out a long-barrel gun and shot Griffin. N.T. 10/21/2020 at 153-54. The medical examiner's testimony established that Griffin was shot in "the back of his chest on the left" with the bullet passing through "both ventricles of the heart." N.T. 10/20/2020 at 89. That evidence alone, proving that [Appellant] shot Griffin through the heart during an argument, was sufficient to establish malice. ***See Commonwealth v. Briggs***, 12 A.3d 291, 306-07 (Pa. 2011) (deliberately shooting victim in the chest is enough to prove malice). Accordingly, the record contained sufficient evidence to allow a reasonable factfinder to conclude, beyond a reasonable doubt, defendant was guilty of third-degree murder. No relief is due.

Trial Ct. Op. at 7-8 (some citations omitted).

Based on our review of the record and viewing the evidence in the light most favorable to the Commonwealth as verdict-winner, we agree with the trial court's conclusions. *See* Trial Ct. Op. at 7-8; ***Palmer***, 192 A.3d at 89. As noted by the trial court, malice may be inferred from the use of a deadly weapon on a vital part of the body. ***See Seibert,*** 622 A.2d at 364. Here, the evidence established that Appellant used a long-barreled gun to shoot the victim through the heart, which is a vital part of the body. Therefore, the evidence was sufficient to prove malice. ***See Palmer***, 192 A.3d at 89; ***Seibert,*** 622 A.2d at 364. Accordingly, Appellant is not entitled to relief.

### Weight of the Evidence

Appellant also claims that his conviction for murder was against the weight of the evidence. Appellant's Brief at 21. In support, Appellant asserts that Byron Johnson initially identified another man, Kevin Coffer, as the

perpetrator from a blind photo array, despite later identifying Appellant in a second array. *Id.* at 21-22. Appellant contends that Jamie Bowen-Rutledge did not see him fire a gun and testified solely that she saw Appellant on the street tying his shoes. *Id.* at 22. Appellant additionally claims that he testified credibly that he did not shoot Jalil Griffin. *Id.*

> This Court has explained:
>
> The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Gonzalez*, 109 A.3d 711, 723 (Pa. Super. 2015) (citations and quotation marks omitted).

Additionally, where a weight claim "is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review." *Commonwealth v. Gibbs*, 981 A.2d 274, 282 (Pa. Super. 2009) (citations omitted).

- 8 -

Here, the trial court addressed Appellant's weight claim as follows:

[T]here was compelling evidence that [Appellant] was the shooter. First, Byron Johnson testified at trial that he witnessed [Appellant] and Griffin arguing about money when [Appellant] pulled out a long-barrel gun and shot Griffin. In addition, Johnson picked [Appellant] out of a photo array as the shooter and identified [Appellant] as the shooter at the trial.

Second, video surveillance evidence compiled by the police showed the shooter, en route to the killing, coming from the area of 30 North Frazier Street, the address that [Appellant] told police was his residence. In addition, video surveillance after the shooting showed the shooter, seconds after the murder, chasing and shooting at another individual near the murder scene. That surveillance video depicts a woman, alter identified as Jamie Bowen-Rutledge, walking past the shooter as he kneels and appears to tie his shoe. Ms. Bowen-Rutledge, who knew [Appellant] from the neighborhood, positively identified [Appellant] from a photo array as the man in the video appearing to tie his shoe.

In addition, [Appellant] gave an interview to police on November 17, 2017, in which he admitted to nearly all of the incriminating facts apart from pulling the trigger. In particular, [Appellant] told detectives that he was disrespected by Griffin, the victim, outside of Train Station Pizza on the night of the shooting. [Appellant] also said that an individual who witnessed the argument between [Appellant] and the victim told [Appellant] to "cool it." [Appellant] then stated that there were people who would kill for him, and that the victim "must have gotten what he got." [Appellant] went on to tell detectives that, had he been more clearheaded that night, he could have stopped the shooting. When the detective asked [Appellant] how he could have stopped it, [Appellant] said, "I don't want to incriminate myself."

Similarly, when [Appellant] testified at the trial, he corroborated substantial portions of the Commonwealth's case. [Appellant] testified that he had encountered Griffin in the neighborhood while [Appellant] was attempting to get some money to purchase cocaine. [Appellant] stated that Griffin had asked him to find some pills and when [Appellant] returned without the pills, Griffin said that was "a crackhead move." [Appellant] confirmed that he was in the area when the shooting took place and had an

argument with the victim directly before the shooting. [Appellant] acknowledged that when he was interviewed by the detectives, he had said that Griffin had "disrespected" him during their argument. [Appellant] also told the jury that he admitted that "there are people out there that kill for me in multiple places."

It is true that Byron Johnson originally identified Cover from a photo as the shooter. Specifically, Johnson initially stated, "it could be him, but I don't remember facial hair." However, Johnson later positively identified [Appellant] as the shooter after he was shown another photo array. When he saw [Appellant]'s photo in the array, Johnson said, "Yes, that's him. Damn, that's him." At trial, Johnson again identified [Appellant] in court as the shooter.

It is also true that when Cofer was arrested, he was in possession of a long-barrel gun, and that eyewitness Johnson had said the shooter had a long-barreled gun. However, the Commonwealth offered evidence at trial that proved the long-barreled gun possessed by Cofer was not the murder weapon. First, Johnson testified that the shooter's gun was black, while the Commonwealth proved that the gun seized from Cofer was silver. In addition, detectives reenacted a clip from the surveillance video in which the shooter's gun was visible, by having a detective walk the same path as the shooter did in the video, while holding the gun seized from Cofer. In the video of the reenactment, Cofer's gun appeared to be lighter in color than the gun carried by the killer.

Trial Ct. Op. at 3-4 (citations omitted and formatting altered).

Based on our review of the record, we discern no abuse of discretion by the trial court in rejecting Appellant's weight claim as the jury was free to believe some, all, or none of the evidence. *See Gonzalez*, 109 A.3d at 723; *Gibbs*, 981 A.2d at 282. Although Appellant challenges the credibility of the witnesses based on alleged inconsistencies in their trial testimony and prior statements, Appellant did not specify how that evidence was "so unreliable and/or contradictory as to make any verdict based thereon pure conjecture."

- 10 -

*See Gibbs*, 981 A.2d at 282. Further, to the extent Appellant invites this Court to re-weigh the evidence presented at trial, that is not the role of our appellate review. *See id.* Accordingly, Appellant is not entitled to relief on this claim.

### Sentencing Claims

Appellant's third and fourth issues implicate the discretionary aspects of his sentence. Appellant's Brief at 23-26. Appellant contends that his sentence is excessive because "he will not be eligible for parole until he is 80 years old. This kind of a sentence, which amounts to a *de facto* life sentence, is not justified under the Sentencing Code . . . ." Appellant's Brief at 23-26. Appellant also argues that the court failed to give appropriate weight to mitigating factors, including Appellant's substance abuse issues, mood disorder, educational deficits, experience with childhood domestic violence, and family contacts. *Id.* at 25.

Initially, it is well settled that

challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S. § 9781(b).

- 11 -

*Commonwealth v. Proctor*, 156 A.3d 261, 273 (Pa. Super. 2017) (some citations omitted and formatting altered).

Here, Appellant filed a timely notice of appeal and preserved his sentencing issue in a post-sentence motion and in his Pa.R.A.P. 1925(b) statement. Further, Appellant has included a Pa.R.A.P. 2119(f) statement in his brief. Therefore, we must determine whether Appellant has raised a substantial question for our review.

"A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Id.* (citation omitted).

"Generally, Pennsylvania law affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. Any challenge to the exercise of this discretion ordinarily does not raise a substantial question." *Commonwealth v. Prisk*, 13 A.3d 526, 533 (Pa. Super. 2011) (citation and quotation marks omitted). However, this Court has held that "an excessiveness claim in conjunction with an assertion that the court did not adequately consider a mitigating factor may present a substantial question." *Commonwealth v. Zeigler*, 112 A.3d 656, 662 (Pa. Super. 2015) (citation omitted).

In his Rule 2119(f) statement, Appellant argues that the trial court imposed an unduly harsh and excessive sentence because the court failed to consider mitigating factors. Appellant's Brief at 20. Therefore, Appellant has raised a substantial question for our review. *See Zeigler*, 112 A.3d at 662.

Our well settled standard of review is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014) (citation omitted).

When imposing sentence, the trial court must follow the general principle that the sentencing should be consistent with "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). Further, "the trial court is required to consider the particular circumstances of the offense and the character of the defendant[,]" including the defendant's "prior criminal record, age, personal characteristics, and potential for rehabilitation." *Commonwealth v. Ventura*, 975 A.2d 1128, 1135 (Pa. Super. 2009) (citation omitted).

Additionally, "[w]here the sentencing court had the benefit of a presentence investigation [(PSI)] report, we can assume the sentencing court

was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." ***Commonwealth v. Griffin***, 65 A.3d 932, 937 (Pa. Super. 2013) (citations omitted and formatting altered). "[W]here a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code." ***Id.*** at 937-38 (citing ***Commonwealth v. Cruz–Centeno***, 668 A.2d 536 (Pa. Super. 1995) (stating that the combination of PSI report and standard range sentence, absent more, cannot be considered excessive or unreasonable)). Finally, an elderly defendant is not entitled to a volume discount solely on account of his age. ***See Commonwealth v. Radecki***, 180 A.3d 441, 470-71 (Pa. Super. 2018) (finding that a sentence of 133-266 months was not an unlawful *de facto* life sentence for a 70-year-old defendant).

Here, the record reflects that the trial court had the benefit of a PSI report, which it reviewed prior to sentencing. ***See*** N.T. Sentencing Hr'g, 5/7/21, at 6-7. The trial court also noted that it had reviewed the forensic evaluation submitted by the defense, the Commonwealth's sentencing memorandum, in addition to letters received on behalf of Appellant. ***Id.*** Ultimately, the trial court sentenced Appellant to the aggregate sentence of twenty-four to forty-eight years of incarceration, requested by the Commonwealth. ***Id.*** at 18.

In its Rule 1925(a) opinion, the trial court reiterated that it had "explicitly considered the information presented at the trial and sentencing

hearing, the presentence report, the prior record score investigation, the forensic evaluation done by the defense, the mitigating evidence submitted on [Appellant's] behalf, [Appellant's] rehabilitative needs, the need to protect the public, and the applicable sentencing guidelines." Trial Ct. Op. at 10; *see also* N.T. Sentencing Hr'g at 15. The trial court also noted that there were aggravating factors, such as Appellant's risk to the public, history of violence, short temper, and the likelihood that he would engage in further antisocial behavior. Trial Ct. Op. at 10; *see also* N.T. Sentencing Hr'g at 15.

Considering all of these factors, the trial court reasoned that a consecutive sentence was justified by the level of criminal conduct in this case, given that "[Appellant] shot and killed Griffin over a trivial argument about drugs and money" and then "ran from the scene and chased down another individual in an apparent attempted gunpoint robbery." Trial Ct. Op. at 11.

Finally, the trial court rejected Appellant's claim that the sentence amounted to an unlawful *de facto* life sentence. *Id.* The trial court noted that it had complied with all applicable sentencing norms in determining a reasonable sentence and that Appellant's age at the time of parole eligibility did not entitle him to a "senior citizen discount." *Id.* (citing *Radecki*, 180 A.3d at 470-71).

Based on our review of the record, we conclude that the trial court did not abuse its discretion in imposing Appellant's sentence. *See Raven*, 97 A.3d at 1253. The record confirms that the trial court had the benefit of a PSI report, which it reviewed prior to sentencing. *See Griffin*, 65 A.3d at 937.

At sentencing, the trial court explicitly considered "all of the mitigating information that was submitted throughout the course of this case and what's present in the presentence report." N.T. Sentencing Hr'g at 16. Further, Appellant's individual sentences were within the standard range of the sentencing guidelines. *See Griffin*, 65 A.3d at 937-38. As noted by the trial court, Appellant is not entitled to a volume discount based on the number of crimes or a "senior citizen discount" on account of his age. *See Radecki*, 180 A.3d at 470-71; *Commonwealth v. Austin*, 66 A.3d 798, 808-09 (Pa. Super. 2013). For these reasons, Appellant is not entitled to relief. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/14/2022